NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

AILEEN NERONA JADORMIO, *Petitioner/Appellee/Cross-Appellant*,

*v.*

RANIE ASIROT JADORMIO, *Respondent/Appellant/Cross-Appellee*.

No. 1 CA-CV 25-0416 FC

FILED 08-14-2026

Appeal from the Superior Court in Yuma County
No. S1400DO202200939
The Honorable Claudia Maria Gonzalez Jimenez, Judge

**VACATED AND REMANDED; AFFIRMED IN PART**

COUNSEL

S. Alan Cook, PC, Phoenix
By S. Alan Cook
*Counsel for Petitioner/Appellee/Cross-Appellant*

Mary Katherine Boyte, P.C., Attorneys At Law, Yuma, AZ
By Mary Katherine Boyte Henderson
*Counsel for Respondent/Appellant/Cross-Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge David B. Gass[1] delivered the decision of the court, in which Judge Anni Hill Foster and Judge D. Andrew Gaona joined.

---

**G A S S**, Judge:

¶1         Father appeals the superior court's dissolution decree, and mother cross appeals. Father raises 2 arguments: (1) the superior court abused its discretion when it granted mother's request to relocate the parties' child from Arizona to California, and (2) the superior court abused its discretion when it allocated community property between the parties and calculated the community lien on the marital residence. Mother challenges the superior court's award of the marital residence to father as his sole and separate property based on a disclaimer deed she signed.

¶2         Because the superior court erred in allocating the parties' joint checking account, the court vacates the superior court's equalization calculation. The court remands for the superior court to amend the decree consistent with the directions in paragraph 38. The court otherwise affirms.

**FACTUAL AND PROCEDURAL HISTORY**

¶3         The court views the facts in the light most favorable to upholding the superior court's ruling. *Ferrill v. Ferrill*, 253 Ariz. 393, 396 ¶ 8 (App. 2022).

¶4         Mother and father married in 2014 and have 1 child together. In 2018, the couple used community funds to buy a home, the marital residence, for $273,500.00. As part of the purchase process, mother signed a

---

[1] Judge David B. Gass was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective June 30, 2026. In accordance with the authority granted by Article VI, Section 3, of the Arizona Constitution, and under A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge David B. Gass as a judge pro tempore in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2026-87.

disclaimer deed stating she "has no present right, title, interest, claim or lien of any kind whatsoever in, to or against said property."

¶5        Mother filed for dissolution in 2022. Father moved for temporary orders giving him exclusive use and possession of the marital residence, allowing mother parenting time, and having the child reside primarily with father in Yuma. Mother amended her petition and moved for temporary orders to allow her to relocate the child to California with her. Mother then left Arizona for California without telling father. Father learned of the move when he took the child to a medical appointment and discovered mother's insurance would not cover the appointment because mother had resigned from her Arizona job.

¶6        The superior court held a temporary orders hearing in July 2023. The superior court denied mother's temporary relocation request, finding she did not meet her burden to show relocation was in the child's best interests. Under the temporary orders, the child was to live primarily with father, and mother received parenting time based on her proposed schedule for father. About 2 years later, the superior court held a trial and entered a dissolution decree.

**I.      In the final decree, the superior court granted mother's request to relocate the child to California.**

¶7        In ruling on mother's request to have the child relocate to California with her and to grant her legal decision-making, the superior court considered all the factors in A.R.S. §§ 25-403.A and -408.I when deciding what was in the child's best interests. Based on the child's best interests, the superior court granted mother's request to relocate the child and awarded both parents joint legal decision-making authority, but gave mother global final decision-making authority if the parents could not agree.

**II.     In the final decree, the superior court addressed the parents' property.**

> **A. The superior court found the marital residence was father's sole and separate property but subject to a community lien.**

¶8        Mother argued the superior court should treat the marital residence as community property because there was "fraud in her signing of the disclaimer deed" that justified setting it aside. The superior court found mother did not establish "by clear and convincing evidence that fraud was used in her signing the disclaimer deed." The superior court thus

awarded the marital residence to father as his sole and separate property and the mortgage on it to him as his sole and separate debt.

¶9         The superior court then imposed a community lien on the marital residence because father used community funds to buy and pay for the marital residence during the marriage.[2] Father bought the marital residence for $273,500.00. The superior court used the formula from *Drahos v. Rens*, 149 Ariz. 248 (App. 1985) to determine the community lien. The following chart demonstrates the superior court's calculations:

| Basis for Findings | Superior Court's Findings | Final Calculation |
|---|---|---|
| Amount due at closing | $279,004.98 | $279,004.98 |
| Community funds used for deposit, fees, and closing costs. | $19,417.98 | $259,587.00 |
| Mortgage payments made before refinance | $9,278.11 | $250,308.89 |
| 2020 refinance amount | (+$9,691.11) | $260,000.00 |
| Community funds used to reduce amount owed from refinance date to 2022 service date | $12,468.00 | $247,532.00 |
| **Total community funds** | $41,164.09[3] | |
| *Drahos* **formula applied** | [$41,164.09 + (0.15 x $167,500.00)] = | $66,289.09 |

---

[2] The court's calculations are based on the superior court's findings. Father proposed slightly different amounts, but the superior found father was not credible and rejected those amounts.

[3] That amount should have been $41,164.62, but the superior court did not include $.53 in the mortgage reduction from the refinance. Neither father nor mother challenges that minor math error.

### B. The superior court made specific findings when it divided the parties' community property.

¶10        The superior court also calculated mother's interest in 2 of father's retirement accounts. Based on the evidence presented, the superior court found:

1.  Father made 4 withdrawals from his retirement accounts totaling $31,059.49, all without mother's knowledge or consent.

2.  Father proved he used the money from 2 of those withdrawals ($10,011.81) for community obligations.

3.  Father did not meet his burden of proving he used the funds from the remaining 2 withdrawals ($21,047.68) to benefit the community.

¶11        The superior court then allocated the community property accordingly, assigning mother and father certain debt balances as their sole and separate responsibility. The superior court credited father with $1,262.00 for payments he made toward mother's personal loan from Wells Fargo. Father requested reimbursement for other payments he made toward the debt and "submitted a demonstrative summary of payments." But the superior court found father did not present supporting evidence and did not meet his burden by clear and convincing evidence. The superior court ultimately awarded father $20,436.74 in an equalization judgment against mother's $7,148.00.

¶12        The court has jurisdiction over father's timely appeal and mother's timely cross-appeal under Article VI, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and -2101.A.1.

### DISCUSSION

¶13        The court defers to the superior court's factual findings unless they are clearly erroneous. *Engstrom v. McCarthy*, 243 Ariz. 469, 471 ¶ 4 (App. 2018). On appeal, the court will not reweigh conflicting evidence. *Hurd v. Hurd*, 223 Ariz. 48,  52 ¶ 16 (App. 2009). Instead, the court gives "due regard to the [superior] court's opportunity to judge the credibility of the witnesses. Even though conflicting evidence may exist, [the court] affirms the superior court's ruling if substantial evidence supports it." *Id.*

¶14        The court reviews matters of law *de novo*. *Woyton v. Ward*, 247 Ariz. 529, 531 ¶ 5 (App. 2019). The court also reviews *de novo* the superior court's characterization of property as community or sole and separate, but

reviews for abuse of discretion the superior court's division of property. *In re Marriage of Pownall*, 197 Ariz. 577, 581 ¶ 15 (App. 2000). The court also reviews for abuse of discretion the superior court's orders for parenting time, relocation, and legal decision-making authority. *See Hurd,* at 52 ¶ 19 (addressing relocation); *Woyton*, 247 Ariz. at 531 ¶ 5 (addressing parenting time and legal decision-making authority). An abuse of discretion occurs when "the record is devoid of competent evidence to support the [superior] court's decision" or when the superior court commits legal error. *Woyton*, 247 Ariz. at 531 ¶ 5.

I.     **The superior court did not err in finding it was in the child's best interests to relocate to California with mother after it considered mother's financial advantage, proximity to family, and work schedule.**

¶15        Father argues the superior court erred in considering the benefits mother would gain in relocation rather than whether relocation was in the child's best interests.

¶16        The superior court must determine whether to allow a parent to relocate with a child "in accordance with the child's best interests" by considering the factors in A.R.S. §§ 25-408.I and -403.A. *See* A.R.S. § 25-408.G; *Woyton*, 247 Ariz. at 531–33 ¶¶ 6–12. The superior court must consider "the reasons for the relocation, the potential advantages of the relocation to both the parent and the child, and whether the relocation will allow a realistic opportunity for parenting time with each parent." *Id.* ¶ 9 (cleaned up) (citing A.R.S. § 25-408.I). The parent who seeks to relocate with a child bears "[t]he burden of proving what is in the child's best interest." A.R.S. § 25-408.G.

¶17        Father does not challenge the superior court's application of the factors, but asks the court to reweigh the evidence and conclude mother did not meet her burden. He argues the superior court's "findings do not favor one party over the other and reveal that Mother did not meet her burden to prove relocation benefited [the child]. As such, relocation should have been denied." Father relies on *Wright v. Farris*, 259 Ariz. 149, 151 ¶ 7 (App. 2025), in which the superior court allowed relocation because the superior court found both parents "equal under the best interests factors." The court reversed on appeal because the superior court did not explain what findings supported the superior court's relocation and parenting time decisions. *Id.* at 152 ¶¶ 12–17.

**¶18** Unlike *Wright*, the superior court did not find the parents' evidence equal. The superior court here applied all the factors in subsections 25-408.I and -403.A and made specific findings highlighting the factors favoring relocation. The superior court found father did not engage mother before making important legal decision-making choices under the temporary orders, such as by enrolling the child in school and extracurricular activities. Instead, father informed mother after the fact. Mother also alleged father had controlling tendencies over her. Though the superior court did not find for mother on that point, it said father did not rebut mother's allegations based on the evidence and father's credibility. The superior court also found mother was more likely to allow "frequent, meaningful, and continuing contact with" father, saying "testimony and evidence also reflect that Father is generally resistant to allow Mother additional parenting time that is not explicitly court ordered." To that point, the superior court noted father's explanations for allowing mother parenting time in Yuma "were not reasonable." The court will not reweigh the evidence. *See Hurd*, 223 Ariz. at 52 ¶ 16.

## II. Except for the division of the parties' joint checking account, the superior court equitably divided the parties' property.

**¶19** Both parties challenge aspects of the superior court's property division orders. In her cross-appeal, mother argues the superior court erred in finding the marital residence was father's sole and separate property. Father argues the superior court correctly found the marital residence was his sole and separate property, but abused its discretion when it calculated the community's equitable lien on it. Father further argues the superior court abused its discretion when it valued his community retirement account, did not give him credit for payments he made toward a loan debt, did not account for the division of the balance in a joint checking account to mother in the decree, and valued a brown side table for less than a value on which the parties agreed.

**¶20** "[C]ommunity property is to be divided 'equitably' absent a sound reason otherwise appearing in the record." *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283 ¶ 15 (App. 2019) (citing *Toth v. Toth*, 190 Ariz. 218, 221 (App. 1997)). The superior court "has broad discretion to allocate community property" and the court "will not disturb its allocation absent an abuse of discretion." *Id.* ¶ 14. The court will affirm "if the evidence reasonably supports it." *Id.*

### A. The superior court did not abuse its discretion when it determined that the disclaimer deed was valid.

**¶21** The court addresses mother's cross-appeal as a threshold issue because if mother prevails, a significant portion of father's appeal becomes moot. Mother cross appeals the superior court's decision finding the marital residence was father's separate property, arguing the disclaimer deed she signed was procured by fraud. The court reviews the classification of property as community or separate *de novo. See In re Marriage of Pownall*, 197 Ariz. at 581 ¶ 15. "Property acquired during marriage is presumed to be community property." *Femiano v. Maust*, 248 Ariz. 613, 615 ¶ 10 (App. 2020). Father must prove by clear and convincing evidence the property is separate. *Id.* "A signed disclaimer deed . . . provides such proof and, absent fraud or mistake, rebuts the community presumption." *Id.* (citing *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 524 ¶ 11 (App. 2007)). "The party attempting to nullify the effect of a disclaimer deed had the burden to show by clear and convincing evidence that the deed was the result of fraud." *Id.*

**¶22** Though the father acquired the marital residence during the marriage, father rebutted the community property presumption by producing a disclaimer deed signed by mother. Mother thus had to show by clear and convincing evidence the disclaimer deed was procured by fraud. *See id.* Mother's evidence was father told her the house would be for them both, they used community funds to make the purchase and mortgage payments, and she did not know what the disclaimer deed meant.

**¶23** Though the superior court found father's explanation about the execution of the disclaimer deed "less than credible," it found mother's evidence was insufficient to find fraud. *See Femiano*, 248 Ariz. at 616 ¶ 14 ("Wife had the burden to prove fraud by clear and convincing evidence."). The superior court thus found the marital residence was father's sole and separate property. The court will not reweigh the evidence on appeal to reach a different result. *See Hurd*, 223 Ariz. at 52 ¶ 16.

**¶24** Mother also argues the court could have found she did not waive her interest by signing the deed. Father argues mother waived the argument by not raising it to the superior court. When a party fails to raise an issue before the superior court, the issue is waived on appeal. *Nold v. Nold*, 232 Ariz. 270, 273 ¶ 10 (App. 2013). Though this argument appears to be an extension of mother's fraud argument, to the extent it goes beyond fraud, the court agrees with father and will not consider it further. The superior court thus did not err in finding the marital residence was father's sole and separate property subject to the community's equitable lien.

**B.**     **The superior court did not abuse its discretion when it included $19,417.98 in community funds spent on the marital residence from 2018 to 2020 in its calculation of the community's equitable lien.**

**¶25**     Father argues the superior court abused its discretion in calculating the community's equitable lien on the residence for two reasons. Father argues (1) the superior court abused its discretion when it determined the community's equitable lien, and (2) the superior court double counted some expenses. Mother argues the superior court did not abuse its discretion. Mother is correct.

**¶26**     When the marital community contributes funds toward 1 spouse's separate property, the community is entitled to reimbursement by an equitable lien. *See Saba v. Khoury*, 253 Ariz. 587, 592 ¶ 15 (2022); *see also Drahos v. Rens,* 149 Ariz. 248, 249 (App. 1985) ("The community, which contributed capital to the separate property, is nevertheless entitled to some form of compensation."). "The existence and the value of an equitable lien present mixed questions of fact and law." *Valento v. Valento*, 225 Ariz. 477, 481 ¶ 11 (App. 2010). The court defers to the superior court's factual findings unless clearly erroneous or unsupported by any credible evidence, but draws its own legal conclusions from those facts. *Id.*

**¶27**     In assessing the community's equitable lien, courts have applied the *Drahos* formula. *Saba*, 253 Ariz. at 591 ¶ 13. The superior court is not bound to use the *Drahos* formula, but it provides a starting point. *Id.* at 592 ¶ 16. Under *Drahos*, courts calculate the equitable lien as follows:

- Dividing the community contributions used to reduce the principal balance by the property's purchase price;

- Multiplying that figure by the appreciation in the property's value during the marriage; and

- Adding that figure to the community's contributions to the principal paid.
$$C + [C/B \times A]$$
  - A = Appreciation;
  - B = Purchase price; and
  - C = Community contributions to principal.

*Id.* at 591 ¶ 12.

¶28        And as the Arizona Supreme Court said, the superior court should "adjust the calculation to account for the community's overall contribution of labor and funds to the separate property along with the market appreciation of the property." *Id.* at 589 ¶ 2. But this requirement does not limit superior court's "discretion to consider the value the community's contributions actually added to the value of the separate property to fairly determine the amount to which the community is entitled." *Id.*

¶29        First, father argues the superior court abused its discretion because it increased the community's equitable lien by $19,417.98 to account for deposits, fees, and closing costs on the marital residence.[4] Father argues the $19,417.98 neither enhanced the value of his separate property nor reduced the principal mortgage on that property. Because father used community funds to purchase the marital residence in the first place, the superior court had "discretion to consider the value the community's contributions actually added to the value of the separate property to fairly determine the amount to which the community is entitled." *Id.* Here, father would not have the sole and separate property but for the infusion of those community funds. The superior court thus did not abuse its discretion when it included them in the community's equitable lien.

¶30        The superior court also did not abuse its discretion when it included $9,691.11 to account for the increased principal ($250,308.89 to $260,000.00) resulting from the refinance. That refinance had a long-term benefit for father that will continue after the dissolution because it lowered father's monthly mortgage payments for the balance of the mortgage period. On these facts, the court cannot say the superior court abused its discretion, apportioning "a fair and equitable reimbursement to the community." *Id*. at 592 ¶ 15 (citing *Bell-Kilbourn*, 216 Ariz. at 524 ¶ 12).

¶31        Second, father argues the superior court erred by including $19,417.98 twice when it calculated the community lien. True, at first blush, it may appear the superior court counted $19,417.98 twice because it used separate entries in the decree, but as the chart in paragraph 8 shows, the

---

[4] On appeal, father uses $19,413.00, reflecting $13,662.00 for the down payment and $5,751.00 for the closing costs. The superior court used $19,417.98. Because father does not explain the minor discrepancy or why the superior court's numbers were incorrect, and because the court can track the superior court's findings, the court will defer to the superior court's factual findings for those calculations. *See Valento*, 225 Ariz. at 481 ¶ 11.

superior court counted the $19,417.98 just once. If the court were to adopt father's calculations, it would exclude the $19,417.98 the community paid toward the marital residence, meaning the community would not receive a "fair return on its investment reflecting its contribution to the increase in the property's value." *Id.* (citing *Honnas v. Honnas*, 133 Ariz. 39, 44 (1982)). The superior court did not err.

III. **The superior court did not err when it accounted for the same $9,281.00 twice from 2 retirement accounts because the superior court found father did not prove he transferred the money from 1 account to the other.**

¶32         Father concedes the funds in his retirement accounts are community property, but argues the superior court erred because it assessed him $9,281.00 twice based on a single transfer from one account to another. Father thus argues the superior court erred in determining the equitable division of his retirement accounts.

¶33         As for father's account #2613, father withdrew $31,059.49 without mother's knowledge or consent. Father proved he used $10,000.00 of those withdrawn funds to benefit the community. Father says he withdrew $21,746.29 from account #2613 before the dissolution filing, withdrew another $9,281.00 right before service, and transferred $9,282.97 from account #2613 into account #1113. But father could not show where those funds went or how they went toward community obligations, so the superior court found father "presented inconsistent, conflicting, or no supporting evidence" for the remaining withdrawals and attributed the amount to father for reimbursement to the community.

¶34         Considering father presented "inconsistent, conflicting or no supporting evidence" to show where the $21,047.68 withdrawal went, the court cannot say the superior court abused its discretion when it calculated the equitable division of account #1113 and #2613. At bottom, father is asking the court to reweigh the evidence on appeal, which the court will not do. *See Hurd*, 223 Ariz. at 52 ¶ 16.

IV. **The superior court did not abuse its discretion when it did not reimburse father for payments made toward the couple's joint federal tax debt.**

¶35         Father argues the superior court erred by not crediting him for post-service payments he made toward a loan mother took out to pay their past joint federal tax debt. A spouse's payments toward community debt with separate property "must be accounted for in an equitable

11

property distribution." *Bobrow v. Bobrow*, 241 Ariz. 592, 596 ¶ 19 (App. 2017). Mother did not respond to this argument in her answering brief. Though the court may consider mother's failure to respond to the argument as a confession of error, the court declines to do so here, preferring "to decide cases on their merits when the interests of justice dictate." *Flynn v. Flynn*, 257 Ariz. 1, 3 ¶ 6 (App. 2024) (reaching the merits of the case rather than treating the failure to file an answering brief as a confession of error).

¶36 Father claims the parties agreed that mother would secure a loan to pay their tax debt and father would make payments to mother to pay down the loan. Father further claims he paid mother every other month until late 2024.

¶37 In considering father's reimbursement claim, the superior court found father did not prove by clear and convincing evidence he made the post-service payments and denied his request. The only evidence father submitted was a summary of payments—not evidence of receipts or confirmations. Because the court will not reweigh the evidence, the superior court did not abuse its discretion by rejecting father's request for credit. *See Hurd*, 223 Ariz. at 52 ¶ 16.

V. **The superior court erred when it did not credit mother for her share of the joint checking account, but did not err when it valued the brown side table.**

¶38 Father argues the superior court abused its discretion when it did not assess mother for $2,862.00 in the parties' joint bank account when it divided the community assets. Father also argues the superior court should have valued a brown side table as $100.00 instead of $50.00—what father alleges is the value on which the parties agreed. Because mother did not address these 2 arguments in her answering brief, father argues mother waived any argument to the contrary. As above, the court exercises its discretion and considers both issues on the merits. *See Flynn*, 257 Ariz. at 3 ¶ 6.

¶39 First, the superior court calculated the bank account balances in 2 columns, 1 for mother and 1 for father. In father's column, the superior court attributed $20,346.74 to him, with $2,862.00 coming from the joint bank account #4853. But the superior court left blank mother's column for the same account. The superior court thus calculated an equalization payment of $48,185.76. But adding the $2,862.00 to mother's column would result in the correct equalization payment of $46,754.75. The court thus remands to the superior court to correct the allocation of the couples joint

checking account and make any commensurate change to father's equalization obligation.

**¶40** Second, as to the brown side table, the superior court did not adopt the parties' agreed upon $100.00 valuation, but it also did not value it at $50.00 as father alleges. Instead, the superior court exercised its discretion and valued it at $150.00. *See Al-Thanayyan*, 246 Ariz. at 283 ¶ 14. Though the superior court did not adopt the parties' $100.00 valuation, the court finds no abuse of discretion in the superior court's valuation of this item. *Id.*

## ATTORNEY FEES AND COSTS

**¶41** Father and Mother both requested an award for attorney fees and costs under A.R.S. § 25-324. Under subsection 25-324.A, the court considers "the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." The parties did not take unreasonable positions on appeal and based on the relevant financial evidence in the record, the court declines to award father attorney fees.

**¶42** Because both parties prevailed in significant parts, the court declines to award costs.

## CONCLUSION

**¶43** The court vacates the superior court's equalization calculation and remands for the superior court to amend the decree consistent with the directions in paragraph 38, but otherwise affirms.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR